IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DANIEL ROSS, MARINA ROBINSON, and JOAN CRAFT, | Civ. No. 18-00023 JMS-RLP |
| Plaintiffs, | ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND REMANDING ACTION TO STATE COURT FOR LACK OF SUBJECT MATTER JURISDICTION |
| vs. | |
| HAWAII NURSES' ASSOCIATION OFFICE AND PROFESSIONAL EMPLOYEES INTERNATIONAL UNION LOCAL 50, | |
| Defendant. | |

**ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND REMANDING ACTION TO STATE COURT FOR LACK OF SUBJECT MATTER JURISDICTION**

## I. INTRODUCTION

On January 16, 2018, Defendant Hawaii Nurses' Association Office and Professional Employees International Union Local 50 ("Defendant" or "HNA") removed this action to this court from the First Circuit Court of the State of Hawaii (the "state court") after the state court issued a 30-day preliminary injunction on January 3, 2018 that enjoined HNA from certain union-related activities. Def.'s Notice of Removal, ECF No. 1. HNA removed based upon the

complete preemption doctrine, contending that the suit "directly relates to the validity" of "an election already conducted" by a labor union, and is thus completely preempted by Title IV of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 481-83. *Id.* at 3, 10 & 11.

The court faces three Motions: (1) Plaintiffs Daniel Ross, Marina Robinson, and Joan Craft's (collectively, "Plaintiffs") Motion for Temporary Restraining Order ("TRO"), ECF No. 10; (2) Defendant's Motion to Dismiss for Lack of Jurisdiction and to Vacate Order Granting Plaintiffs' Motion for Preliminary Injunction, ECF No. 20; and (3) Plaintiffs' Motion to Remand, ECF No. 21. Based on the following, the action is REMANDED to state court for lack of subject matter jurisdiction. Plaintiff's Motion for TRO is DENIED as moot, and the court does not reach Defendant's Motion to Dismiss.

## II. <u>BACKGROUND</u>

### A. Factual Background

Because the Motions at issue primarily concern federal jurisdiction and procedure, and do not require the court to address the merits of the Complaint, the court sets forth only the essential factual allegations of the underlying dispute to provide necessary context for the Motions.

HNA is a Hawaii labor union with approximately 4,500 members whose purpose is "promoting the professional and educational advancement of nurses and other health care professionals and advancing their economic and general welfare by securing terms and conditions of employment consistent with the ideals of fair wages and benefits."  Compl. ¶ 7, ECF No. 1-1.  In 2010, HNA "affiliated with the Office and Professional Employees International Union ('OPEIU'), becoming Hawaii Nurses' Association, OPEIU Local 50, AFL-CIO." *Id.* ¶ 9.

Plaintiff Daniel Ross is a nurse at Queen's Medical Center.  *Id.* ¶ 4. He was "recently removed from the Office of Vice President of the HNA Executive Board," after he was found "to be a member not in good standing" of the HNA.  *Id.*  Specifically, an HNA Trial Board November 16, 2017 written decision "found that Daniel Ross violated his duties by participating in the sending of anonymous emails to HNA members."  *Id.* ¶ 22.  The Trial Board recommended that he "be immediately removed from the office of Vice President" and "be prohibited from running for any officer position for a period of six (6) years."  *Id.* ¶ 23.  It found his "actions constitute conduct unbecoming an official of HNA," such that he "should be considered a member not in good standing for a period of six (6) years."  *Id.*

Plaintiff Marina Robinson is a nurse at Kaiser Hospital.  *Id.* ¶ 5.  She is an HNA member who was "recently removed [as] Treasurer of the HNA Executive Board."  *Id.*  A different November 16, 2017 HNA Trial Board decision found that she violated her duties as Treasurer "by making unreasonable reporting requests, signing checks to pay HNA's financial obligations in an untimely fashion, [and] refusing to sign paychecks for an independent contractor performing services for HNA."  *Id.* ¶ 24.  The Trial Board recommended removing her from office and prohibiting her from running for any officer position for four years.  She was, however, allowed to continue as a member in good standing and as a union steward.  *Id.* ¶ 25.

Plaintiff Joan Craft is a nurse at Queen's Medical Center.  *Id.* ¶ 6.  "[S]he was recently removed from her position as Chief Steward" of HNA" and found "to be a member not in good standing."  *Id.*  The HNA Trial Board found that she "violated her duties as Chief Steward by owning [sic?] anonymous emails, participating in the content of anonymous emails, and misrepresenting union member freedom of speech rights."  *Id.* ¶ 26.  It recommended that she immediately be removed her from her position as Chief Steward, prohibited from running for any officer position for four years, and "be considered a member not in good standing" for four years.  *Id.* ¶ 27.

Without reiterating the specific allegations of the Complaint, Plaintiffs allege that HNA violated various provisions of OPEIU and HNA governing documents and procedures in these Trial Board decisions (and related review processes) that removed them from office, and (with Ross and Craft) found them to be "members not in good standing." *Id.* ¶¶ 29, 36, 47-76. For example, among other relief, Ross and Robinson seek a declaration that they were removed from office in violation of governing documents and Hawaii Revised Statutes ("HRS") § 414D-138. *Id.* ¶ 76. They also apparently sought to have their appeals heard "at the next regularly scheduled membership meeting[.]" *Id.* ¶¶ 36, B.

When the Trial Board made its recommendations on November 16, 2017, all three Plaintiffs were candidates for an ongoing election for officers of the 2018 HNA Executive Board. *Id.* ¶ 37. Ross was a candidate for President, Robinson for Trustee, and Craft for Treasurer. *Id.* The Complaint alleges that the OPEIU Constitution requires new nominations if any candidate is suspended from union membership during the election process, but the HNA Executive Board refused to hold new nominations. *Id.* ¶ 40. Ballots were counted on December 12, 2017. *Id.* ¶ 41.

The Complaint further alleges that "Plaintiff Joan Craft prevailed in her candidacy for the office of Treasurer, but the [HNA] refuses to recognize her

candidacy for office." *Id.* ¶ 42. "Plaintiff Daniel Ross lost in his candidacy for the office of President[] because the HNA Executive Board informed the membership, while he was a candidate on the election ballot, that he was no longer eligible for the position." *Id.* ¶ 43. Likewise, "Plaintiff Marina Robinson lost her candidacy for the position of Trustee[] because the HNA Executive Board informed the membership, while she was a candidate on the election ballot, that she was no longer eligible for the position." *Id.* ¶ 44.

On its face, Plaintiffs' Complaint raises no federal claims (and there is no diversity of citizenship). Specifically, the Complaint asserts three Counts under Hawaii law: (1) Count One ("Breach of Governing Documents") alleges that Defendant violated provisions of the HNA Constitution and bylaws and/or HNA's parent union's (OPEIU) Constitution, policies, or procedures, all in "breach of the governing documents and HRS Section 414D-138"; (2) Count Two ("Declaratory Judgment") seeks a declaration that Ross and Robinson were removed from the offices of Vice President and Treasurer, respectively, in violation of governing documents and HRS § 414D-138; and (3) Count Three ("Injunctive Relief") seeks to enjoin Defendants from acting in violation of the governing documents and HRS § 414D-138. Compl. at 8-12. The Complaint's prayer seeks the following relief:

> A. That the Court issue judgment declaring that: (i) the
> Hawaii Nurses' Association violated their governing

documents; (ii) The Hawaii Nurses' Association
improperly removed Plaintiffs Daniel Ross and Marina
Robinson from their respective offices of Vice President
and Treasurer; and

B.  That the Court issue judgment enjoining the
Defendants to: (i) cease and desist holding a membership
meeting that does not include Plaintiffs' appeals of their
Trial Board decisions; and (ii) cease and desist
appointing and installing the prevailing candidates on the
current election ballot into Offices of the HNA Executive
Board.

*Id.* at 12.

## B.  Procedural History

Plaintiffs filed their Complaint in state court on December 15, 2017,

and it was served on December 18, 2017.  ECF No. 1-1 at 2; ECF No. 1-2 at 3.  A

week later, on December 22, 2017, Plaintiffs filed a Motion for Preliminary

Injunction, along with a Motion to Shorten Time for hearing that Motion.  ECF

Nos. 1-3, 1-5.  The Motion for Preliminary Injunction was heard by Judge Dean

Ochiai on January 3, 2018.  ECF No. 1-10.

Judge Ochiai issued an oral ruling granting the Motion on January 3,

2018, followed by a written order filed on January 11, 2018 (the "State Court

Preliminary Injunction").  ECF No. 1-10.  He ordered as follows:

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.  Defendant, as well as its officers, agents, servants, employees, and attorneys, are enjoined from installation and/or ratification of Defendant's Executive Board, elected by the ballots counted on December 12, 2017;

2.  Defendant, as well as its officers, agents, servants, employees, and attorneys, are enjoined from conducting further disciplinary proceedings, including appeals, concerning the charges against Plaintiffs, determined by the Trial Board's written decisions issued on November 16, 2017;

3.  Defendant, as well as its officers, agents, servants, employees, and attorneys, are enjoined from imposing and/or enforcing the penalties in the Trial Board's written decisions issued on November 16, 2017;

This preliminary injunction shall remain in effect for thirty (30) days from January 3, 2018, at 9:30 a.m. During the thirty-day period, the parties are placed back into the positions they were in prior to the following internal charges being filed against Plaintiffs: The charges filed by Terilyn Carvalho Luke against Daniel Ross, dated August 21, 2017; the charges filed by Terilyn Carvalho Luke against Marina Robinson, dated June 29, 2017; and the charges filed by Terilyn Carvalho Luke against Joan Craft, dated October 4, 2017.

*Id.* at 3-4.

Defendant removed the action to this court on January 16, 2018, ECF

No. 1, and Plaintiffs filed their Motion for TRO on January 26, 2018. ECF No. 10.

The Motion for TRO sought to extend the State Court Preliminary Injunction

(which was to expire according to its terms on February 2, 2018) until Plaintiffs

could file, and the court could consider, their then-planned Motion to Remand. ECF No. 10-1 at 2. That is, it sought to preserve the status quo while this court could determine whether the action was properly removed. Defendant filed an Opposition to the Motion for TRO on January 28, 2018, ECF No. 11, and Plaintiffs filed their Reply on February 1, 2018. ECF No. 19.

After the court held status conferences on January 29th and 30th, ECF Nos. 14 & 15, the parties stipulated to certain terms regarding the State Court Preliminary Injunction. ECF No. 18. The parties agreed (and the court subsequently ordered) that they would waive enforcement of the first paragraph of the State Court Preliminary Injunction, but Defendant would continue to be bound by the other portions until this court could hear the Motion for TRO, as well as a Motion to Remand by Plaintiffs and a Motion to Dismiss by Defendant. *Id.*

On February 2, 2018, Defendant filed its Motion to Dismiss for Lack of Jurisdiction and to Vacate the State Court Preliminary Injunction. ECF No. 20. That Motion argues that all or much of Plaintiffs' Complaint is barred (or "preempted") by the LMRDA and that this court should also vacate the State Court Preliminary Injunction for that reason. *Id.* Plaintiffs filed their Motion to Remand on February 2, 2018 as well, primarily arguing that Defendant waived its right to remand by litigating matters in state court. ECF No. 21. Corresponding

Oppositions were filed on February 5, 2018, ECF Nos. 24 & 25, and Replies were filed on February 6, 2018. ECF Nos. 26 & 27. The court heard the Motions on February 9, 2018.

### III. <u>STANDARD OF REVIEW</u>

Although the court faces a Motion to Remand, Motion for TRO, and Motion to Dismiss, ultimately it bases this Order on remand principles only. Thus, the court only recites the standard for the Motion to Remand.

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992)). "The presumption against removal means that 'the defendant always has the burden of establishing that removal is proper.'" *Id.* (quoting *Gaus*, 980 F.2d at 566). "[T]he court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing *Gaus*, 980 F.2d at 566).

///

///

# IV. DISCUSSION

Although the court faces three separate Motions, they overlap and raise common jurisdictional issues regarding preemption and removal jurisdiction. In particular, in justifying removal and in seeking dismissal, Defendant relies on a "preemption" argument it never made in state court — that Plaintiffs' action in substance challenges the results of a union election that already has been conducted, and thus the claims must be decided under Title IV of the LMRDA. In this context, however, this argument improperly conflates a preemption *defense* with "complete preemption" for purposes of removal jurisdiction. These related, although distinct, concepts are often confused. Here, even if Defendant's argument for a preemption defense has merit, its argument for complete preemption does not. To explain why this is so, the court first addresses defensive preemption under Title IV of the LMRDA, and then analyzes whether the LMRDA completely preempts Plaintiffs' Complaint.

## A. The Preemption Defense Under Title IV of the LMRDA

Plaintiff argues that this court (or *any* court) lacks jurisdiction to adjudicate Plaintiffs' claims because the LMRDA provides the exclusive remedy for a direct post-election challenge. That remedy is a complaint with the Secretary of Labor, and possibly a subsequent federal court action brought by the Secretary.

*See, e.g.*, *Casumpang*, 269 F.3d at 1056 ("A complaint filed with the Secretary of Labor is the exclusive means of resolving disputes governed by Title IV. LMRDA § 403, 29 U.S.C. § 483."); *Chao v. Local 1357, Int'l Bhd. of Elec. Workers, AFL-CIO*, 184 F. Supp. 2d 1029, 1034 (D. Haw. 2001) ("Title IV provides the Secretary with the exclusive power to challenge in federal district court an election already conducted. 29 U.S.C. § 482(b); 29 U.S.C. § 483. [A] [s]uit by the Secretary under Title IV is the exclusive post-election remedy for challenging an election.").[1]

And this argument — at least as a preemption defense to at least some state law claims — has significant merit. Although the Complaint raises violations (sounding in breach of contract) of union rules or procedures under HNA and OPEIU governing documents, the ultimate relief sought concerns Plaintiffs' eligibility as candidates for an HNA election and the corresponding validity of the results of that election. *See* Compl. ¶ 79 ("Plaintiffs will suffer irreparable harm if [HNA] is permitted to continue with the installation of the current candidates.");

---

[1] In this regard, 29 U.S.C. § 483 provides, in pertinent part:

> . . . . Existing rights and remedies to enforce the constitution and bylaws of a labor organization with respect to elections prior to the conduct thereof shall not be affected by the provisions of this subchapter. *The remedy provided by this subchapter for challenging an election already conducted shall be exclusive*. (Emphasis added).

*id.* ¶ B (asking the court, among other relief, to enjoin HNA from "appointing and installing the prevailing candidates on the current election ballot into Offices of the HNA Executive Board.").  Indeed, the state court enjoined HNA "from installation and/or ratification of Defendant's Executive Board, elected by the ballots counted on December 12, 2017."  State Court Preliminary Injunction at 2, ECF No. 1-10 at 2.  It thus appears that at least a portion of the State Court Preliminary Injunction violates Title IV's exclusivity provision.[2]

*Camsupang* emphasized that § 483's exclusivity provision is limited to "when an individual union member challenges the validity of an election that has already been completed."  269 F.3d at 1056 (quoting *Local No. 82, Furniture & Piano Moving v. Crowley*, 467 U.S. 526, 541 (1984)).  The inquiry "turns on two factors: (1) whether the type of relief sought will interfere with the operation of a union pursuant to an already-conducted election, and (2) whether a plaintiff may obtain relief under Title IV for the type of injury he or she claims to have suffered."  *Id.* at 1057 (citation omitted).  But *Camsupang* also recognized that, under *Crowley*, not *all* post-election actions are necessarily covered by § 483.  *Id.* Instead, *Crowley* indicated that "indirect" post-election challenges are an exception

---

[2] To be clear, it appears that the state court did not consider a preemption defense because HNA never raised it until it removed to this court.

to Title IV exclusivity. *See* 467 U.S. at 541 n.16 ("The exclusivity provision of Title IV may not bar postelection relief for Title I claims or other actions that do not directly challenge the validity of an election already conducted.") (citations omitted).

Here, Plaintiffs' action appears to seek relief that, in significant part, "will interfere with the operation of a union pursuant to an already-conducted election." *Camsupang*, 269 F.3d at 1057. Further, in considering *Crowley's* exception (for an action that does not "directly challenge the validity of an election already conducted," 467 U.S. at 541 n.16), it is significant that Plaintiffs' action raises the *eligibility* of candidates for a union election. *See Murray v. Amalgamated Transit Union*, 206 F. Supp. 3d 202, 211 (D.D.C. 2016) (analyzing the meaning of footnote 16 in *Crowley*, and concluding that a challenge to a candidate's eligibility is an "inexorable" challenge to rights that fall under Title IV). In dismissing as preempted an action that challenged a determination that union members were not in good standing (rendering them ineligible for candidacy), *Murray* reasoned,

> Title IV protects, in relevant part, the right of "every member of a union in good standing to be eligible to be a candidate and to hold office (subject to reasonable qualifications uniformly imposed) without being subject to penalty, discipline, or improper interference or reprisal

> of any kind by such organization or any member
> thereof."

*Id.* (quoting 29 U.S.C. § 481(e)) (internal editorial marks omitted). Such disputes "'basically relating to eligibility of candidates for office fall squarely within Title IV of the Act and are to be resolved by the administrative and judicial procedures set out in that Title.'" *Id.* (quoting *Calhoun v. Harvey*, 379 U.S. 134, 141 (1964)) (internal editorial marks omitted). Although the complaint pled improper-discipline and breach-of-contract claims, in substance it sought to challenge the validity of a rerun election. *Id.* at 211-12. In contrast, a complaint seeking reinstatement as a union member in good standing, untethered to the validity of an election, would not be subject to Title IV preemption. *Camsupang*, 269 F.3d at 1057.

Nonetheless, unless this court has subject matter jurisdiction, it would be improper for this court to decide whether some or all of Plaintiffs' Complaint is barred by § 483. Whether or not HNA has a good *defense* based on § 483's exclusivity provision, the court must first determine whether the action was properly removed — that is, whether this court even has jurisdiction to address that preemption defense. This raises the often misunderstood "complete preemption" doctrine, which is distinct from (although similar to) defensive preemption. *See, e.g.*, *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938,

946 (9th Cir. 2014) (addressing "the difference between 'complete' preemption and defensive preemption, often referred to as conflict or field preemption"). The court thus turns to removal jurisdiction and complete preemption.

## B. The LMRDA Does Not Completely Preempt Plaintiffs' Action — It Was Improperly Removed

Although no federal claims are apparent on the face of Plaintiffs' Complaint, HNA removed based on complete preemption under the LMRDA. As follows, this was an improper basis for removal.

### 1. *The complete preemption doctrine*

First, some basics. A defendant may remove a complaint from state court if "the district courts of the United States have original jurisdiction" over the action. 28 U.S.C. § 1441(a). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 6 (2003). "Thus, it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in

the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar*, 482 U.S. at 393.

"The Supreme Court has recognized, however, an 'independent corollary to the well-pleaded complaint rule known as the complete pre-emption doctrine.'" *Retail Property*, 768 F.3d at 947 (quoting *Caterpillar,* 482 U.S. at 393). "That doctrine posits that there are some federal statutes that have such 'extraordinary pre-emptive power' that they 'convert[ ] an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1997)).

> But it is critical to keep in mind that:
>
> [c]omplete preemption is really a jurisdictional rather than a preemption doctrine, as it confers exclusive federal jurisdiction in certain instances where Congress intended the scope of federal law to be so broad as to entirely replace any state-law claim. Complete preemption is a limited doctrine that applies only where a federal statutory scheme is so comprehensive that it entirely supplants state law causes of action.

*Id.* (quoting *Dennis v. Hart,* 724 F.3d 1249, 1254 (9th Cir. 2013)). "'[C]omplete preemption' is a misnomer, having nothing to do with preemption and everything to do with federal occupation of a field." *Lehmann v. Brown,* 230 F.3d 916, 919 (7th Cir. 2000). It "must be distinguished from ordinary preemption." *Retail*

*Property*, 768 F.3d at 948 (quoting *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005)).  "[T]he doctrines serve distinct purposes and should be kept clear and separate in our minds."  *Id.* at 949 (citation omitted).  "'Complete preemption' is a doctrine applicable to removal jurisdiction only; it is not a doctrine of defensive preemption[.]"  *Id.* at 948.  That is, "[e]ven if [defensive] preemption forms the very core of the litigation, it is insufficient for removal."  *Lontz v. Tharp*, 413 F.3d 435, 441 (4th Cir. 2005) (citing *Caterpillar*, 482 U.S. at 393).

### 2.    *The LMRDA*

"The Supreme Court has construed only three federal statutes to so preempt their respective fields as to authorize removal of actions seeking relief exclusively under state law[.]"  *In re Miles*, 430 F.3d 1083, 1088 (9th Cir. 2005).[3] The LMRDA is not one of them.  *See, e.g.*, *Hahn v. Rauch*, 602 F. Supp. 2d 895, 910 (N.D. Ohio 2008) ("The Supreme Court has never held that the LMRDA completely preempts state law.").  And although lower courts may also conclude that federal statutes completely preempt an area of state law, "the Supreme Court

---

[3]  The three are "section 301 of the Labor and Management Relations Act ('LMRA'), 29 U.S.C. § 185; section 502 of the Employee Retirement Income Security Act of 1974 ('ERISA'), 29 U.S.C. § 1132; and sections 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85, 86."  *In re Miles*, 430 F.3d at 1088 (citations omitted).

has made clear that it is 'reluctant' to find complete preemption." *Lontz*, 413 F.3d at 441 (citing *Metro. Life*, 481 U.S. at 65). "[T]he Court has articulated exacting standards that must be met before it will find complete preemption." *Id.* Indeed, "a federal statute must provide the '*exclusive* cause of action' for complete pre-emption to apply[.]" *Moore-Thomas*, 553 F.3d at 1245 (citing *Beneficial Nat'l Bank*, 539 U.S. at 9) (emphasis added). As a result, "its occurrence is 'rare.'" *Retail Property*, 768 F.3d at 947 (citation omitted). It is a "limited doctrine" because Congressional intent must be "so broad as to *entirely* replace *any* state-law claim." *Dennis*, 724 F.3d at 1254 (emphases added). "[T]he congressional intent that state law be entirely displaced must be clear in the text of the statute." *Lontz*, 413 F.3d at 441 (citing *Metro. Life*, 481 U.S. at 65-66).

Applied here, § 483 itself indicates that the LMRDA does not provide the exclusive remedy for *all* union-election challenges — only "already completed" elections fall within its exclusive regime. It leaves untouched "*[e]xisting rights and remedies* to enforce the constitution and bylaws of a labor organization with respect to elections *prior to the conduct thereof*[.]" 29 U.S.C. § 483 (emphases added). And, as discussed previously, *Crowley* noted that only "direct" post-election challenges are implicated. 467 U.S. at 541 n.16 ("The exclusivity provision . . . may not bar postelection relief for Title I claims *or other*

*actions* that do not *directly* challenge the validity of an election already conducted.") (emphases added).[4]

Moreover, Title IV of the LMRDA has its own administrative scheme that involves other remedies, even as to "already conducted" elections — it requires a complaint with the Secretary of Labor who investigates to determine whether there is probable cause and, if the complaint "has not been remedied," 29 U.S.C. § 482(b), then brings a civil action to set aside an invalid election. And even before a complaint is filed with the Secretary, aggrieved members must exhaust "the remedies available under the constitution and bylaws" of the union and its parent. 29 U.S.C. § 482(a)(1). The statute's "stated commitment is to postpone governmental intervention until the union is afforded the opportunity to redress the violation." *Wirtz v. Local 153, Glass Blowers, Ass'n*, 389 U.S. 463, 472 (1968).

The existence of this type of statutory scheme was paramount in the Ninth Circuit's holding that a state action was not completely preempted by the Railway Labor Act ("RLA"). *See Moore-Thomas*, 553 F.3d at 1245. *Moore-Thomas* recognized that the RLA "requires submission of [covered] disputes to

---

[4] *See, e.g.*, *Ross v. Int'l Bhd. of Elec. Workers*, 513 F.2d 840, 843 (9th Cir. 1975) (allowing a common-law tort claim for damages alleging the union acted improperly in executing an election, where the election was no longer at issue).

internal dispute-resolution processes and then to a division of the National

Adjustment Board or an arbitration board selected by the parties" before a suit is

brought. *Id.* (citing 45 U.S.C. §§ 153 & 184). "Only after 'the grievance has been

heard by the adjustment board does exclusive jurisdiction rest with the federal

court.'" *Id.* (quoting *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 192

(9th Cir. 1983)) (brackets omitted). Like the RLA analyzed in *Moore-Thomas*, the

LMRDA contemplates other types of remedies, and thus "does *not* provide an

exclusive federal cause of action." *Id.*

      HNA relies on *Porch-Clark v. Engelhart*, 930 F. Supp. 2d 928 (N.D.

Ill. 2013), which indeed concluded that "the LMRDA completely preempts other

avenues for challenges to the results of a union election." *Id.* at 935. This court,

however, is not convinced by *Porch-Clark's* reasoning, as it focused solely on the

last sentence of § 483.[5] As analyzed above, that sentence indicates that a Title IV

remedy is exclusive only for a certain type of challenge (a "direct" challenge) to

some union elections. This is perhaps a good indication of a *defense* of

preemption, but not necessarily an indication that Congress intended the scope of

---

[5] *Porch-Clark* also relied on *Davis v. International Union (UAW)*, 392 F.3d 834, 839
(6th Cir. 2004), *overruled on other grounds* by *Blackburn v. Oaktree Cap. Mgmt., LLC*, 511 F.3d
633 (6th Cir. 2008), which found complete preemption based on the LMRDA. Nevertheless,
'[b]y all appearances, the court in *Davis* was discussing ordinary, or conflict preemption, rather
than complete preemption[.]" *Hahn*, 602 F. Supp. 2d at 910 n.8.

federal law in the LMRDA to be "so broad as to entirely replace any state law claim" regarding union elections. *Dennis*, 724 F.3d at 1254. Complete preemption requires "extraordinary" preemptive force. *Metropolitan Life*, 481 U.S. at 65. And "even an 'obvious' pre-emption defense does not, in most cases, create removal jurisdiction." *Id.* at 66. *See, e.g.*, *Hahn*, 602 F. Supp. 2d at 910 ("[T]he mere fact that [defendants] could assert a preemptive LMRDA defense before the state court is not sufficient to support re moval") (quoting *Gerow v. Kleinerman*, 2002 WL 1625417, at *4 (D.N.J. July 2, 2002)).

In short, HNA has not met its burden to establish that removal was proper. *Gaus*, 980 F.2d at 566 ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."). The court will remand the action to state court. After remand, HNA presumably should be free to assert a federal preemption defense — an argument not previously made in state court — and any ruling on a federal preemption defense would then be reviewable in Hawaii's appellate courts, and potentially by the U.S. Supreme Court. *Retail Property*, 768 F.3d at 947.[6]

---

[6] Because the court is remanding for lack of subject matter jurisdiction, the court need not reach Plaintiffs' argument that HNA waived its right to remove by arguing on the merits in state court and only removing after it lost. *See, e.g.*, *Kenny v. Wal-Mart Stores, Inc.*, ___ F.3d ___, 2018 WL 650998, at *3 (9th Cir. Feb. 1, 2018) ("[A] defendant 'may waive the right to remove to federal court where, after it is apparent that the case is removable, the defendant takes

(continued . . .)

### 3. HNA Did Not Remove Based Upon the Labor and Management Relations Act ("LMRA")

In its Opposition to Plaintiffs' Motion to Remand, HNA argues in part that this court has original jurisdiction under Section 301 of the LMRA, 29 U.S.C. § 185 (one of the three areas where some types of Section 301 claims are completely preempted as found by the Supreme Court).[7] ECF No. 24 at 7-8. It argues that Plaintiffs' Complaint seeks to enforce provisions of union constitutions, claims which could fall under § 185. But — regardless of whether Plaintiffs' action might implicate the LMRA, and, if so, have been a basis for removal — the LMRA unquestionably was *not* the basis for Defendant's removal. Rather, Defendant removed the action based *solely* on the LMRDA. ECF No. 1.

In removing this action, HNA was required to provide a "statement of the ground for removal" in its notice of removal. 28 U.S.C. § 1446(a). That is,

---

(. . . continued)

actions in state court that manifest his or her intent to have the matter adjudicated there, and to abandon his or her right to a federal forum.'") (quoting *Resolution Tr. Corp. v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir. 1994)).

[7] Section 185(a) provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

"the defendant must state the basis for removal jurisdiction in the [notice of] removal." *O'Halloran v. Univ. of Wash.*, 856 F.2d 1375, 1381 (9th Cir. 1988). And HNA unambiguously stated its basis — the LMRDA. ECF No. 1. It is too late to assert a different basis for removal now; the notice of removal cannot be amended substantively at this stage.

> Ordinarily, "the notice of removal required by [28 U.S.C. § ] 1446(b) may be amended freely by the defendant prior to the expiration of the thirty-day period for seeking removal." 14C Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Pocket Part by The Late Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Joan E. Steinman, Federal Practice and Procedure § 3733 ["Federal Practice & Procedure"]. **After the 30-day period for seeking removal has passed, however, "the notice may be amended only to set out more specifically the grounds for removal that already have been stated, albeit imperfectly, in the original notice."** *Id.*; *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Montana*, 213 F.3d 1108, 1117 (9th Cir. 2000) ("[A] defendant may amend the Notice of Removal after the thirty day window has closed to correct a defective allegation of jurisdiction."); *Barrow [Dev. Co. v. Fulton Ins. Co.]*, 418 F.2d [316,] 317 [(9th Cir. 1969)] (after thirty-day period lapses, the defendant may not amend a notice of removal "to add allegations of substance but solely to clarify 'defective' allegations of jurisdiction previously made").

*Hester v. Horowitz*, 2017 WL 1536401, at *3 (D. Haw. Apr. 28, 2017) (quoting *Pioneer Asset Inv. Ltd. v. Arlie & Co.*, 2015 WL 9665667, at *4 (D. Haw. Dec. 14,

2015)) (some brackets added) (bold emphasis in *Pioneer Asset*).[8]  That is, an

amendment to a removal notice "may not add completely new grounds for removal

or furnish missing allegations, even if the court rejects the first proffered basis of

removal."  14C Federal Practice & Procedure § 3733 at 655-56 (citing cases).

Accordingly, the court will not consider HNA's LMRA preemption arguments to

the extent it asserts them as a basis for complete preemption.  They may, however,

still be relevant towards a defense of preemption.

## C.      The "Futility Doctrine"

HNA asks this court — even if the court finds (as it does) that the

action was improperly removed — nevertheless to dismiss the Complaint because

"it makes little sense to remand a case to a State court that is without jurisdiction to

hear the case for the very same reason the federal court lack[s] jurisdiction."

Def.'s Mot. at 12-13, ECF No. 20-2 at 12-13 (citing a "futility doctrine" applied in

*Porch-Clark*, 930 F. Supp. 2d at 936-37).  Assuming the court has discretion to

apply a "futility doctrine," the court declines to apply it here.  After the action is

remanded, the state court may address the defense of LMRDA preemption.

---

[8] The Complaint was served on December 18, 2017, and was removed on January 16, 2018.  ECF No. 1 at 2.  The 30-day period within which to remove has passed.

If, after removal, "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "Several district courts have interpreted § 1447(c) as removing the discretion to deny remand once a federal court determines that it lacks subject matter jurisdiction in a removal case." *Bell v. City of Kellogg*, 922 F.2d 1418, 1424 (9th Cir. 1991) (citations omitted). But *Bell* recognized and applied "an exception to § 1447(c) where there is 'absolute certainty that remand would prove futile.'" *Id.* at 1425 (quoting *M.A.I.N. v. Comm'r, Maine Dept. of Human Servs.,* 876 F.2d 1051, 1054 (1st Cir.1989)). "Because we are certain that a remand to state court would be futile, no comity concerns are involved. District court resolution of the entire case prevents any further waste of valuable judicial time and resources." *Id.*

"However, the *Bell* rule has been questioned, and may no longer be good law." *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1197 (9th Cir. 2016).

> In *International Primate Protection League v. Administrators of Tulane Educational Fund*, decided a few months after we decided *Bell*, the Supreme Court declined to apply a futility exception to the remand rule. 500 U.S. 72, 88-89, 111 S. Ct. 1700, 114 L. Ed. 2d 134 (1991). Although the Court did not reject the futility doctrine outright, it did take note of "the literal words of § 1447(c), which, on their face, give no discretion to dismiss rather than remand an action." *Id.* at 89, 111 S. Ct. 1700 (quotation marks and alteration omitted). In the wake of *International Primate*, a number of other circuits have expressly rejected the futility doctrine. *See Hill v.*

> *Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1225-
> 26 (10th Cir. 2012) (collecting cases).

*Id.* at 1197-98. Despite questioning *Bell's* validity, however, *Polo* had no need to

decide whether it has been overruled. Instead, it recognized that *Bell* requires

"absolute certainty" that a state court will dismiss an action.

> Even applying the *Bell* rule, however, a district court
> must have "absolute certainty" that a state court would
> "simply dismiss[ ] the action on remand." 922 F.2d at
> 1425 (quotation marks omitted). In other words, only
> when the eventual outcome of a case after remand is so
> clear as to be foreordained have we held that a district
> court may dismiss it — to "prevent [ ] any further waste
> of valuable judicial time and resources." *Id.*

*Id.* at 1198. And because it was "far from clear that a state court would dismiss"

the relevant claim, *Polo* held that the district court should have simply remanded

under § 1447(c), rather than dismissing. *Id.*

   *Polo* is directly on point. Although HNA appears to have a valid

preemption defense, this court cannot say with "absolute certainty" that the state

court will dismiss all of the action. Such a review would require a close analysis of

the factual allegations of the Complaint, and an understanding and application of

Hawaii law (both contract law and HRS § 414D-138). Plaintiffs have argued, for

example, that they have stated claims that would survive LMRDA preemption.

*See, e.g.*, Pls.' Opp'n at 3, ECF No. 25 ("[E]ven assuming that some of Plaintiffs'

claims regarding the election are precluded by Title IV . . . Plaintiffs have asserted a challenge to the status of Plaintiffs' membership rights."); *id.* at 10 ("[E]ven if there is Title IV preemption, it would solely affect relief regarding the election and would not affect Plaintiffs' claims regarding their membership rights and disciplinary actions taken against them."). That is, even if this court were inclined to apply a preemption defense, it is far from clear how extensively it applies. Remand is not futile.

## D.  The Court Declines to Award Costs, Expenses, or Fees Under 28 U.S.C. § 1447(c)

If a case is remanded, § 1447(c) authorizes a court to award "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." But, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008).

Applying that objective standard, the court declines to award costs or expenses to Plaintiffs. "The preemptive effect of federal labor statutes is a

complex and challenging area of law." *Toensmeier v. Amalgamated Transit Union*, 2016 WL 884644, at *4 (D. Or. Mar. 8, 2016) (denying request for fees under § 1447(c) in remanding an action improperly removed on the ostensible basis of LMRDA complete preemption). Moreover, there is some non-binding authority finding such preemption under the LMRDA. *See Porch-Clark*, 930 F. Supp. 2d at 935. HNA's removal was not objectively unreasonable.

## V. <u>CONCLUSION</u>

For the foregoing reasons, the action is REMANDED to the First Circuit Court of the State of Hawaii. The Motion for TRO, which sought only to preserve the status quo while the court adjudicated the Motion to Remand, is DENIED as MOOT. The court does not reach Defendant's Motion to Dismiss.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 12, 2018.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Ross et al. v. Haw. Nurses' Assoc. Office & Prof'l Emp. Int'l Union Local 50*, Civ. No. 18-00023 JMS-RLP, Order Denying Plaintiffs' Motion for Temporary Restraining Order and Remanding Action to State Court for Lack of Subject Matter Jurisdiction